IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REEDER STREET, INC. | : | CIVIL ACTION |
|     Plaintiff | : | |
| v. | : | |
| | : | |
| LCIJ, INC. | : | No.   5:11-cv-06000-ER |
|     Defendant | : | |
| | : | Jury Trial Demanded |

## ORDER

AND NOW, this _____ day of _____, 201__, upon consideration of Defendant's Motion to Dismiss and Plaintiff's Opposition thereto; arguments of counsel, if any; and for good cause shown, it is hereby ORDERED that Defendant's Motion is DENIED.

BY THE COURT:

_____
                                                          J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REEDER STREET, INC. <br>     Plaintiff <br> v. <br><br> LCIJ, INC. <br>     Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br><br> No.   5:11-cv-06000-ER <br><br> Jury Trial Demanded |

## ORDER

AND NOW, this _____ day of _____, 201___, upon consideration of Defendant's Motion to Dismiss and Plaintiff's Opposition thereto; arguments of counsel, if any; and for good cause shown, it is hereby ORDERED that:

1. Defendant's Motion is DENIED; and

2. Plaintiff shall have leave to amend the Complaint to add the franchisor, National Tenant Network, as a party.

BY THE COURT:

_____
                                              J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REEDER STREET, INC. | CIVIL ACTION |
|     Plaintiff | |
| v. | |
| LCIJ, INC. | No. 5:11-cv-06000-ER |
|     Defendant | |
| | Jury Trial Demanded |

## PLAINTIFF'S OPPOSITION TO DEFENDANT LCIJ. INC.'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, Reeder Street Inc., by and through its undersigned counsel, respectfully submits this Opposition to Defendant LCIJ Inc.'s Motion to Dismiss and Memorandum of Law In Support Thereof.

### BACKGROUND

This matter arises out of Defendant's tortious and intentional actions through its aggressive and unauthorized encroachment on Plaintiff's exclusive franchise territory. Both Defendant and Plaintiff purchased franchises from National Tenant Network ("NTN"), a franchisor that provides tenant-screening services to the real estate industry. As the franchisor, NTN provides Defendant and Plaintiff with the same tools to manage their businesses.

On March 17, 2005 Plaintiff entered into a franchise agreement (hereinafter the "Franchise Agreement"), which grants Plaintiff an <u>exclusive</u> license to service a defined territory within Pennsylvania[1] ("Franchise Counties"). (*See* Doc 1 at ¶ 7). Defendant's franchise territory

---

[1] Plaintiff's franchise territory consists of the Pennsylvania counties of Northampton, Cumberland, Fulton, Adams, Franklin, Mifflin, Perry, Juniata, Snyder, Lebanon, Union, Dauphin, York, Berks, Lancaster, Blair, Centre, Huntingdon, Clearfield, Clinton, Lehigh, Carbon, Schuylkill, Northumberland, Montour, Luzerne, Columbia, Sullivan, Lycoming, Indiana, Somerset, Cambria, Bedford, Bradford, Susquehanna, Wayne, Pike, Wyoming, Lackawanna, and Monroe (hereinafter the "Franchise Counties").

1

consists of four (4) franchise agreements which allows for a license to service territories in five (5) counties in Pennsylvania and certain counties in New Jersey that are adjacent to but do not overlap with Plaintiff's exclusive territory.

The Franchise Agreements, signed by Plaintiff and Defendant, clearly define how a franchisee determines whether an account is in its exclusive territory or the exclusive territory of another franchisee[2]. Franchise accounts are determined by the physical location of the rental unit such as an apartment complex and not by the physical location of the owner or property manager's place of business. For example, if the management company is located in New Jersey but the rental unit is in Plaintiff's Franchise Counties then the account belongs to Plaintiff. NTN has operated this franchise model since 1986. For decades, NTN franchisees have followed the rules of the Franchise Agreement, even in situations where a management company has rental units in multiple franchisees' territories.

On occasion a management company has properties in multiple franchisees' territories. Each franchisee services those accounts where the rental unit is located in their exclusive franchise territory. The physical location of the management company does *not* control who manages the accounts. One such example is Community Realty Management ("CRM"). CRM is managed by both Plaintiff and Defendant because the physical locations of the rental units are in both their

---

[2] The Franchise Agreements executed by both the Plaintiff and Defendant with NTN, states in Section I(D) that it is the **geographical location of the account** (e.g. apartment community) being serviced and not the location of the owner's/property manager's or agents place of business that determines whether an account is within a franchisee's exclusive territory:
> Every franchise is directly related to a specific place of business for a designated city, town or other defined area. Each franchise is an exclusive grant of a license solely in relation to the business location. **Franchisee accounts are identified by the physical location of the apartment community, etc. requesting NTN® services not by the location of the owner/property manager's or agent's place of business.** (Emphasis added.)

...
...

territories but the management company is in Defendant's territory. Defendant makes the unsupported claim that cross-territory management is problematic. On the contrary, CRM is quite pleased with the service Plaintiff has provided for the rental units located in Plaintiff's exclusive territory and complained when Defendant tried to solicit its business. (*See* Doc 10 at ¶ 20). Shortly after Plaintiff purchased its exclusive license, it discovered Defendant was servicing the properties managed by Altman and the Geltman management companies (hereinafter "Altman and Geltman") that were located in Plaintiff's franchise territory. Defendant never asked Plaintiff for permission to service these accounts. Plaintiff and Defendant did not have an agreement for Defendant to service these or any other properties in Plaintiff's territory. In fact, Defendant admitted in the email dated September 28, 2010 that no such agreement existed. (*See* Doc 1 at ¶ 18). Defendant sent Plaintiff some checks it alleged to be 10% royalty payments for servicing the Altman and Geltman properties but provided no accounting with the checks. Defendant simply wrote "Altman and Geltman" in the memo field of each check. Defendant would like this Court to believe that Defendant is currently servicing the same accounts it serviced in 2005. This is not the case.

On or about September 2010, Plaintiff discovered that Defendant was servicing far more than the Altman and Geltman properties. Based on an audit performed by NTN, Plaintiff further discovered Defendant had in fact serviced 190 accounts ("Accounts") in Plaintiff's territory, which included some of the most lucrative accounts. Defendant's unauthorized encroachment caused the permanent loss of business opportunities to Plaintiff as some accounts initially serviced by Defendant are no longer producing revenue. A very likely reason for such revenue loss is the account decided to switch its business to another non-NTN service provider.

At no time did Defendant request permission from Plaintiff and NTN as required by NTN's Confidential Operating Manual to service account in Plaintiff's exclusive franchise territory. NTN's Confidential Operating Manual sets forth the policy that explains the process a franchisee must follow if it wants to service accounts out of its exclusive franchise territory[3]. It is important to note that approximately 10 years ago Defendant played an instrumental role in creating this policy when Defendant discovered another franchisee was servicing accounts within Defendant's exclusive territory without its permission. Defendant insisted a policy be implemented that would protect it from unauthorized encroachment; the very same behavior that Defendant is now doing in Plaintiff's exclusive territory. Clearly since Defendant was instrumental in the establishment and implementation of the franchise policy precluding the servicing of accounts within the exclusive territory of another franchise and had complained to NTN when Defendant discovered encroachment in its territory by another franchisee, Defendant knew that servicing of at least 190 accounts within Plaintiff's exclusive territory violated the policy. Defendant intentionally and

---

[3] Confidential Operating Manual provision Defendant sent Plaintiff in an email dated June 23, 2011:

> Each license granted by the FRANCHISOR to the FRANCHISEE permits **exclusive marketing in a defined geographical territory** (See Article 1 of the NTN Franchise Agreement). **Without express written consent** signed by an officer of the FRANCHISOR, an NTN office **may not service** rental units **outside of the geographical area defined by Article 1**. At the discretion of the FRANCHISOR, FRANCHISOR may conduct studies to determine if the exclusivity requirement is being maintained. Evidence of out of territory marketing will result in a notice to cure under Article XIV of the NTN Franchise Agreement being sent to the FRANCHISEE. Short of termination of the FRANCHISE, the FRANCHISOR, at FRANCHISOR'S option, may impose the following measures:
> A. Immediate transfer of the out of territory account to the appropriate NTN office.
> B. Forfeiture to the appropriate office of all income received from the out of territory account. (Emphasis added)

4

knowingly serviced the Accounts within the contractually granted exclusive territory purchased by Plaintiff. Now that Defendant has been caught encroaching on Plaintiff's exclusive territory, Defendant wants to ignore the policy it helped develop.

Nothing in the out-of-territory servicing policy remotely comes close to supporting Defendant's claim that the purpose of this policy "reflects NTN's attempt to deal with those situations where another franchisee is unable to provide the level of service required by the subscriber." Instead the policy states that if a franchisee wants to service an account outside of its exclusive territory it is not allowed to do so until it gets express written permission from NTN. NTN can, according to the policy, conduct studies to determine if the exclusivity requirement is being maintained and then identifies the actions NTN can take to correct the unauthorized out-of-territory servicing.

Defendant asserts that the course of conduct over the length of the relationship *of the parties* should be a factor taken into consideration. However, it is Defendant's unauthorized course of conduct alone that it wishes to rely on to justify its encroachment into Plaintiff's exclusive territory. No course of conduct existed between Plaintiff and Defendant or NTN and Defendant that would sanction Defendant taking whatever accounts it desired from another franchisee without first obtaining permission.

For years, Defendant stealthily entered Plaintiff's exclusive territory taking revenue from the Accounts that rightfully belonged to Plaintiff. It was not until **September 2010** that Plaintiff became aware of the full scope of Defendant's encroachment. Defendant now attempts to rely on its unauthorized course of conduct to support its position. In order for there to be a course of conduct between parties, all parties need to know that the conduct is occurring. In this case,

Plaintiff and NTN were not aware that Defendant has serviced over 190 accounts in Plaintiff's territory until NTN conducted the audit in 2010. The mere fact that NTN or Plaintiff may have had a one-time arrangement with Defendant for another matter does not create a course of conduct that authorizes Defendant to take any accounts it wants from NTN franchisees across the country without asking permission of the franchisees and NTN.

Defendant then relies on the fiction that payment of a 10% royalty rate is the cure all for its unauthorized servicing of accounts in another franchisee's exclusive territory. No support for this 10% "royalty rate" exists in the Franchise Agreement or the Confidential Operating Manual. Even if a franchisee were to agree to payment of a 10% royalty rate in exchange for Defendant servicing agreed upon accounts, this does not support Defendant's position that it can now service any accounts it wants in the franchisee's territory without asking the franchisee's permission and obtaining the express written permission from NTN. Nor did Defendant pay this alleged 10% royalty rate for all the properties it serviced in Plaintiff's exclusive territory. NTN's audit shows that Defendant did not fully pay Plaintiff the fictional 10% for all accounts Defendant serviced since 2005.

There are NTN competitors that provide tenant screening who do not operate their businesses as franchises. Instead of joining a competitor, Defendant decided to purchase a franchise and agreed to abide by the rules of the franchise, which includes restricting its servicing activities to a defined set of counties as set forth in each Franchise Agreement. Now that it has been caught encroaching on other franchisees' territories without first following the established franchise procedures, Defendant wants to change the franchise rules to its benefit and to the detriment of all other franchisees in the NTN franchise. Instead of the physical location of the

rental unit determining which franchisee should manage the account as expressly stated in the Franchise Agreement, Defendant wants the physical location of the management company to be the determining factor. If, by chance, which is the case here, a large management company with rental units located throughout the country is located in Defendant's territory, Defendant now says it should be able to service all these accounts through the country. The end result is this litigation for Defendant's tortious and intentional interference with Plaintiff's business.

## LEGAL ARGUMENT

In its motion, Defendant asserts that NTN is an indispensable party under Federal Rule of Civil Procedure 19 because the franchise documents govern how the franchise operates and that the Court cannot adjudicate the propriety of the franchise without NTN. The present lawsuit does not challenge the methods of operation of the NTN franchise system. The present lawsuit challenges Defendant on how it intentionally interfered with Plaintiff's business and converted funds that rightfully belonged to Plaintiff. NTN does not need to be a party for the Court to find Defendant intentionally interfered with Plaintiff's business.

Plaintiff's claims against Defendant are directed to the tortious and intentional acts of Defendant and as such do not require the presence of NTN as a party. There are no counterclaims because Defendant did not timely file its Answer. This Court can construe how the NTN franchise is operated based upon the Franchise Agreement, Confidential Operating Manual, and the testimony of NTN. NTN can confirm how the NTN franchise operates when it testifies as a witness for Plaintiff.

The ultimate ruling by this Court will determine whether Defendant encroached Plaintiff's exclusive franchise territory and interfered with a contractual or business relationship, breached a

third party beneficiary contract, misrepresented facts to Plaintiff's detriment, participated in unfair competition, converted revenue rightly belonging to Plaintiff, benefited because of unjust enrichment or breached an oral contract between Plaintiff and Defendant; and whether Defendant should prepare an accounting pursuant to Pa.R.C.P. 1021(a). NTN does not need to be party for the Court to adjudicate these claims.

Defendant states Plaintiff should have sued NTN "for breaching its franchise relationship with Plaintiff by allowing a separate franchise to allegedly flout the franchise's rules and regulations." In the Eastern District of Pennsylvania, it is "well established that *Rule 19* does not require the joinder of joint tortfeasors, nor principals and agents, nor person against whom the defendant may have a claim for contribution." Fanning v. Black & Decker, Inc., No. 98-6141, 1999 U.S. Dist. LEXIS 3407, 5 (E.D. Pa.1999). The fact that NTN might be a joint tortfeasor, principal or contributor to an award, does not make it an indispensable party.

The cases Defendant presents in its Memorandum of Law are those where a ***franchisee*** is joined to a case after a third party sued the franchisor. None of the law Defendant asserts supports the joinder of the franchisor; the cases only support joining the franchisee when the franchisor is sued by a customer of the franchisee.

In Gillis v. McDonald's Corporation, 1992 (U.S. Dist. LEXIS 14239 (E.D. Pa. 1992) a patron of McDonald's sued McDonald's Corporation alone for injuries resulting from a slip and fall. The court held that the ***franchisee*** was an indispensable party because it was "unlikely the plaintiffs could successfully hold McDonald's liable for in the injuries" and that McDonald's was likely to seek indemnification from the franchisee. Id. At 4 and 5 respectively.

In Thompson v. Jiffy Lube Int'l, Inc., 2006 U.S. Dist. LEXIS 39113 (D. Kas. 2006),

plaintiffs sued the Jiffy Lube franchisor for *inter alia* deceptive practices and did not include the franchisee owner of the outlet visited by one of the plaintiffs. The plaintiffs argued that the franchisor was responsible for the deceptive practices and that no other parties were necessary even though the events giving rise to the action occurred at the franchisee's place of business. The franchisor also contended that the franchisee had a contractual obligation to indemnify the franchisor. The court held that the ***franchisee*** was an indispensable party.

The facts in the cases Defendant's cites for support are the opposite of the facts in the instant matter. Plaintiff is suing the franchisee that committed the deceptive acts not the franchisor. Defendant mistakenly relied on case law referencing the indispensable party being that of franchisee not the franchisor. There is a very distinguishable distinction in the roles and responsibilities of the franchisor versus the franchisee. Simply because there is a contractual relationship between franchisor and franchisee does not mean they go hand in hand as parties in the lawsuit. The interests of NTN would not be directly and adversely affected by a judgment in Plaintiff's favor because Plaintiff is not challenging the franchise rules but rather asserts they should be followed. Such a judgment would only affect Defendant, who is already a party in this case.

NTN is currently in arbitration with Defendant[4]. Requiring NTN to be a party to this matter will only complicate the issues and make litigation more costly for those parties already involved. NTN, as stated above, can provide any pertinent information via discovery and depositions

---

[4] Contrary to Defendant's assertion, the Franchise Agreement restricts Defendant to mediating its claims or submitting them to binding arbitration. Defendant exercised this option under the Franchise Agreement and brought an arbitration proceeding against NTN. Defendant's "discretion" was whether to do nothing, settle, mediate or arbitrate its claim. It had no other options. Plaintiff is not a party to that arbitration nor is it required to arbitrate its claims against Defendant under its Franchise Agreement.

9

without being a party to this matter.

Furthermore, for a claim of tortious interference of a contract, the Defendant is the entity that interfered with the contract or business relationship. In the case at hand, the Defendant did exactly that by interfering with Plaintiff's contract with NTN. NTN had no interest plus it cannot interfere in its own contract.

Defendant bears the burden of producing evidence which shows the nature of interest possessed by NTN and that its absence will impair NTN's interest. Id at 57 (citing to Citizens Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994)). Defendant failed to support its burden. Defendant did not provide affidavits of NTN's interest or other relevant extra-pleading evidence that would support its position. Defendant failed to demonstrate how requiring NTN to be a party rather than NTN testifying under oath would not protect NTN's interest.

Alternatively, should this Court find that NTN is an indispensable party, Plaintiff requests leave to amend the Complaint to add NTN as a party in this case. Fed. R. Civ. P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." Thompson, 2006 U.S. Dist. LEXIS at 31 (citing to Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). None of these grounds that might justify a denial Plaintiff's request for leave to amend the Complaint exist in the present case.

## III. Conclusion

For the aforementioned reasons Plaintiff respectfully requests that the Court deny Defendant LCIJ Inc.'s Motion to Dismiss; or alternatively deny Defendant LCIJ Inc.'s Motion to Dismiss and grant Plaintiff leave to amend the Complaint to add franchisor, National Tenant Network, as a party.

MILLER, TURETSKY, RULE & McLENNAN

Dated: December 27, 2011        By: _____
                                     Virginia A. Gates

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REEDER STREET, INC. | : | CIVIL ACTION |
|     Plaintiff | : | |
| v. | : | |
| LCIJ, INC. | : | No.    5:11-cv-06000-ER |
|     Defendant | : | |

## CERTIFICATE OF SERVICE

I do hereby certify on this 27th day of December, 2011, a true and correct copy of the foregoing *Plaintiff's Opposition to Defendant LCIJ, Inc.'s Motion to Dismiss and Memorandum of Law in Support Thereof* electronically or by first class mail, postage prepaid, or telecopy on the following on December 27, 2011:

        Richard J. Perr, Esq.
        Fineman Krekstein & Harris P.C.
        (*via electronic mail*)
        rperr@finemanlawfirm.com

        _____
        Virginia A. Gates (PA No. 91388)
        Miller, Turetsky, Rule & McLennan
        3770 Ridge Pike, Suite Two
        Collegeville, PA 19426